IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NYFEIS LIGHTY,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 19-1207** |
| : | |
| **WILLIAMS,** *et al.*, : | |
|     **Defendant.** : | |

**McHUGH, J.**                                                                                                  **September 16, 2022**
**MEMORANDUM**

      This is an action brought by a *pro se* prisoner alleging two Constitutional violations: (1) conditions of confinement claim against an officer for not allowing him food and recreational time; and (2) an excessive use of force claim against two officers stemming from an incident in June 2018. Discovery is now complete, and the defendant correctional officers have moved for summary judgment. For the first claim, the conditions of confinement alleged do not rise to the level of Eighth Amendment violations. For the second claim, excessive use of force, the context is important: the incident occurred as correctional officers were attempting to secure the Plaintiff after saving him from suicide, and he admits to refusing to be handcuffed and kicking and punching the officers. Viewing the facts in the light most favorable to Plaintiff, there is no genuine dispute as to material fact such that a reasonable fact finder could find that the officers' use of force was done maliciously and sadistically to cause harm. Defendants' Motion for Summary Judgment will therefore be granted.

**I.     Factual Background:**

Plaintiff Nyfeis Lighty's Complaint arises out of events that occurred while he was incarcerated at Philadelphia Industrial Correctional Center ("PICC"). Lighty Dep. 14:6-9., Mot. Summ. J. Ex. B, ECF 24-2. Mr. Lighty alleges that Correctional Officer Rosa-Antonetty ("Officer Rosa") denied Plaintiff exercise and extra food every time that Officer Rosa worked the 3pm-11pm shift. *Id.* at 18:3-23.[1] Plaintiff avers that this denial began in the middle of June 2018 and that he filed a grievance with prison officials within the same month. *Id*. at 18:23-19:10.

The events leading to Plaintiff's second claim occurred on June 23, 2018. Plaintiff alleges that, having been deprived of food and recreation time, he was "feeling suicidal," and decided "to make a noose from my light fixture and hang it from the ceiling." Lighty Dep. 23:1-10. Then, as Plaintiff had completed the noose and put it around his neck, an officer, Correctional Sergeant Bryant, looked inside his cell. *Id.* at 23:9-17. Seeing Plaintiff attempting to hang himself, Bryant purportedly yelled "I'll beat your ass. He said, pop [his] cell." *Id*. at 23:17-19. Bryant then "pulled a knife out of his pocket and cut the noose off [Plaintiff's] neck." *Id*. After cutting the noose off, Bryant put the knife back in his pocket and told Mr. Lighty to "cuff up." *Id*. at 24:5-7. Plaintiff refused to be handcuffed. Plaintiff testified that Sergeant Bryant then:

> tried to bend my arm around my back so in my mind I said, what are you doing. He said, I have to cuff you up. So, I refused to cuff up. So, at this point he bent my arm all the way back that it hurt, and so when I came around the other guard jolted me up, and from that point we started exchanging minor punches, but these guys, you know, are twice my size.

*Id*. at 24:11-19. Plaintiff identified the other guard as Correctional Officer Williams. *Id*. at 25:2.

---

[1] At his deposition, Plaintiff was asked if Officer Rosa denied him food, and he responded yes. Lighty Dep. 18:15-18. In his grievance attached to his Complaint in this action, Plaintiff refers to a denial of "extra food." ECF 2 at 16.

2

Plaintiff admits that a mutual struggle ensued following his refusal to be cuffed. In the course of that fight, Plaintiff maintains that the two officers "stomped" on his head, back, and neck. Lighty Dep. 25:12-14. Plaintiff was hit "a few times." *Id.* at 26:4. When asked to explain which parts of the body CO Williams hit him in, Plaintiff responded that, "It's not that I remember. It was like this happened in the heat of the moment." *Id.* at 25:19-20. Plaintiff admits that he fought back against "both officers," "trying to cause harm onto them to protect myself." *Id.* at 25:23-24. Plaintiff hit them with his "fists, elbows," and "kicked them a little bit because [he] was on the ground." *Id*. at 26:9-10. The fight lasted for a "good minute or two." *Id*. at 26:17-19. Eventually, Plaintiff surrendered, laid down, and allowed himself to be cuffed because he did not want to pick up another charge for hitting the officers. *Id.* at 27:1-4. As he was going down, he alleges that the officers gave him "a little punch and a little kick." *Id.* at 27: 4. He also alleges that after he was cuffed, CO Williams "pushed [him] against the desk," and was "squeezing the cuffs tight." *Id.* at 28:7-12.

Plaintiff then asked for medical attention because he "felt suicidal. . . had back pain. . . fists were hurting. . . [and] head was hurting." Lighty Dep. 30:11-13. He was taken to the PICC's psychiatric hospital. *Id*. at 30:17-19. There, he was given Tylenol, but he declined psychiatric medication because he was uncomfortable taking anything he was not familiar with. *Id.* at 30:21-24. Plaintiff testified that he had bruising on his chest and back and also had sustained blood in his nose.[2] *Id*. at 31-32. His hands and wrists were swollen from the cuffs and his legs were bruised from kicking. *Id*. at 33:7-17.

---

[2] In his Complaint, Plaintiff alleges that he experienced "internal bruising, restless nights of slumber, anxiety attacks, mental stress, suicidal feeling, depression, cold sweats, nosebleeds, and confusion" as a result of the physical struggle. Compl. at 5, ECF 2. At his deposition, Plaintiff clarified that he didn't have any bruising inside his body, but rather, "just [had] bruises on my body." Lighty Dep. 31:22-32:3. He also explained that his nose was not leaking with blood, but that "if you stick tissue in my nose there was blood in there." *Id*. at 32:9-12.

3

Plaintiff attached two grievances, each dated June 27, 2018, to his Complaint.  The first grievance primarily addresses the situation with CO Rosa denying him extra food.[3]  ECF 2 at 15.  He states that he is "sick mentally and tired physically of the way he been treating me." *Id.*  The second grievance primarily pertains to the officers' use of force, complaining that they put their "hands and feet on me when they enter my cell. . . I was a[n] attempt[ed] suicide victim that got treated wrong physically and mentally."  ECF 2 at 16.  He alleges that one grievance was returned to him, *see* Lighty Dep. at 19:13-16 ("After I filed the grievance they gave me my copy back"), and that he never received further response, or any paperwork from the prison officials related to the grievances, *see id.* at 20:22-24; 39:14-19 ("I never received nothing, never got a response, nothing.").

Discovery is now complete and the Defendants Correctional Officers move for summary judgment.  ECF 24.  Two months have passed with no response from Plaintiff, rendering the motion ripe for review.

## II.  Standard of Review

The motion for summary judgment is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Plaintiff is *pro se*, so is held to a less stringent standard than trained counsel. *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009).  Although *pro se* pleadings and filings must be

---

[3] The grievance states that "Rosa. . . get inmates to 'sell there [sic] soul' is what they call it so he won't have to do extra work so he even give you a tray or four packs of cookies.  I don't get either one.  It don't make no since [sic] how he been treating me."  ECF 2 at 15.  It is unclear from the record what "selling your soul" refers to.  The Defendants characterize the claim as meaning that Officer Rosa "would give inmates extra food for those who do extra work for him."  Mot. at 6.

4

"construed liberally," the same summary judgment standard applies to *pro se* litigants. *See Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010).

Although Defendants' Motion is unopposed because Plaintiff has not filed any response, a plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. V. I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Rather, the Court "still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (citing Fed. R. Civ. P. 56(a) and *Anchorage Assocs.,* 922 F.2d at 175).

### III. Discussion[4]

a. *Plaintiff's Conditions of Confinement Claim Fails:*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment governs claims brought by prisoners challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 164-66 (3d Cir. 2005). "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

---

[4] Defendants also assert failure to exhaust, but their treatment of the issue is perfunctory. Mr. Lighty attached two grievances pertinent to his claims here. He asserts that his grievances were not responded to in accordance with the controlling policy, rendering the process unavailable to him. *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). Exhaustion is an affirmative defense, *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013), and Defendants have utterly failed to establish that the grievances were addressed in an appropriate manner.

Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cty. Corr. Facility,* 221 F.3d 410, 418 (3d Cir. 2000). Importantly, only "extreme deprivations" will rise to the level of a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Even crediting his factual allegations, a reasonable fact finder could not conclude that Mr. Lighty suffered an Eighth Amendment deprivation. *See Celotex Corp.*, 477 U.S. at 322. Here, Plaintiff complains of being denied *extra* food when Officer Rosa was on duty, not that he was deprived of adequate nutrition. *See Farmer*, 511 U.S. at 832 (holding that the Eighth Amendment requires "humane conditions of confinement," which includes, among other things, "adequate food."). In addition, he complains of being denied exercise when Officer Rosa worked the 3pm to 11pm shift, not that he was denied exercise all together. The denial of exercise or recreation in some circumstances may result in a violation of the Eighth Amendment, *see Peterkin v. Jeffes*, 855 F.2d 1021, 1031–33 (3d Cir. 1988), but such is not the case here where the denial was temporary. *See Fantone v. Herbik*, No. CIV.A. 11-0484, 2013 WL 504610, at *13 (W.D. Pa. Jan. 17, 2013), report and recommendation adopted, No. CIV.A. 11-0484, 2013 WL 504693 (W.D. Pa. Feb. 8, 2013), *aff'd*, 528 F. App'x 123 (3d Cir. 2013); *see also LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993) ("Because a temporary Nutraloaf diet does not deny 'the minimal civilized measure of life's necessities,' its use falls short of the threshold deprivation necessary to form the basis of an Eighth Amendment violation."); *Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992) (forty-five minutes of exercise per week not unconstitutional); *Knight v. Armontrout,* 878 F.2d 1093, 1096 (8th Cir. 1989) (denial of outdoor recreation for thirteen days did not violate the Eighth

Amendment).[5]  In short, whatever deficiencies may have existed, they do not rise to the level of a constitutional violation.

   b. *Plaintiff's Excessive Force Claim Fails:*

The cruel and unusual punishment clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers.  *See Whitley v. Albers*, 475 U.S. 312, 318–19 (1986).  As a preliminary matter, Defendants misstate the controlling standard. [6]  In an excessive force claim, the core inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  The Supreme Court has held that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical

---

[5] These Circuit cases were cited with approval by a panel of the Third Circuit in a non-precedential opinion. *Dockery v. Beard,* 509 Fed.Appx. 107, 112–13 (3d Cir. 2013).

[6] Defendant's Motion wrongly contends that to state a claim for excessive force, a plaintiff must establish "a significant injury, which 2) resulted directly and only from the use of force which was clearly excessive to the need, the excessiveness of which was 3) clearly and objectively unreasonable, and 4) the action constituted an unnecessary and wanton infliction of pain." Mot. at 9 (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

Although the *Hudson* Court did list those elements, it did so when describing the Fifth Circuit's holding, which it then reversed.  The Supreme Court has instead specifically "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal citation omitted).

I therefore reject Defendants' first argument, which is premised on the mistaken assertion that Plaintiff's claim lacks merit because he has "failed to establish sufficient evidence that he sustained significant injury that could support his excessive use of force claim." Mot. at 9.  Defendants posit that the "*de minimus*" injury of bruising and blood inside his nose "would not qualify as a significant injury needed to prevail on an excessive force claim." *Id.*  This argument ignores the fact that, while the extent of injury suffered by an inmate is *one* of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. *Hudson*, 503 U.S. at 2.

7

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted). And while the "degree of injury is relevant for any Eighth Amendment analysis, there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000).

In applying the controlling test, courts are tasked with considering the following factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). Events leading up to a use of force must also be considered. In the context of potentially deadly force, the Third Circuit has held that the governing test "requires us to assess not only the reasonableness of [the officer's] actions at the precise moment of the shooting, but the 'totality of circumstances' leading up to the shooting." *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016).

Here, Plaintiff alleges that officers "stomped" on his back, head, and neck. In some contexts, even without any significant injuries, such allegations might be sufficient to withstand summary judgment. Plaintiff's claim here ultimately fails because there is insufficient evidence for a reasonable fact finder to conclude that the use of force was malicious and sadistic given the facts of this case. Force was used immediately after Plaintiff's suicide attempt while officers were trying to secure him for his own safety, and he admittedly not only resisted but actively fought them.

For the first and second factors, there is undisputed evidence of a need to use force and a reasonable juror could not find that attempts to secure Plaintiff were unreasonable or excessive. The officer's first action was to cut the noose from Plaintiff's neck, likely saving his life.  When Officer Bryant tried to restrain Plaintiff, he resisted this restraint and began to punch, hit, and kick the officers.  Plaintiff admits to "trying to cause harm onto [the officers] to protect" himself.  Lighty Dep. 25:23-24.  Moreover, although Plaintiff alleges that his back, neck, and chest were "stomped on," he could not explain what he meant by those words, stating that it all happened in the heat of the moment and that he did not remember.  *Id.* at 25:19-20.

For the third factor, both the medical records and Plaintiff's own testimony indicate that the injury inflicted here was not severe. And the lack of evidence of serious injuries in the medical records takes some of the force out of Plaintiff's use of the word "stomped."  Certainly, as discussed above, a claim may survive summary judgment with only evidence of *de minimis* injuries, where the use of force is alleged "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10 (internal citation omitted).  For example, in *Brooks v. Kyler,* the Third Circuit reversed the grant of summary judgment where there was only evidence of a few scratches to plaintiff's neck and wrists, but the plaintiff alleged that he was complying with the guards' orders and handcuffed when he was repeatedly punched in the head, stomped in the back and neck, slammed into a cell wall, choked, threatened, and nearly rendered unconscious.  204 F.3d 102, 104 (3d Cir. 2000); *see also Smith v. Mensinger*, 293 F.3d 641, 644 (3d Cir. 2002) (denying summary judgment where medical records documented no injuries but prisoner alleged he was punched and kicked while he was handcuffed behind his back and unresisting).  But Plaintiff's account differs from these cases in significant and critical ways.  Here, Plaintiff was not handcuffed and unresisting, but rather actively fighting with the officers.

9

As to the fourth factor, there was a reasonable threat to the officers' safety, as well as the prisoner's safety. Lighty's suicide attempt endangered his own safety. The purpose in securing him was to allow for medical evaluation after he attempted to harm himself, and his subsequent resistance put his own safety, as well as the officers' safety, at risk, given his candid admission that he was "trying to cause harm onto them."

As to the fifth factor, the record reflects that the force largely ceased once Plaintiff stopped resisting. Plaintiff alleges that once he was handcuffed, his wrists were squeezed, and he was pushed against a wall. Assuming he had stopped resisting and did not pose a threat, the officers should not have continued to use force against him. These allegations of being pushed and squeezed, however, are not sufficient to meet the Eighth Amendment standard. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (internal quotations omitted). And courts must bear in mind that drawing a line as to where force should cease must be approached practically, "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Johnson, supra,* 837 F.3d at 350, quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Ultimately, having carefully analyzed Mr. Lighty's sworn testimony under the controlling standard, I conclude that a reasonable jury could not find that the officers acted maliciously and sadistically to cause harm.

## IV. <u>Conclusion</u>

For the reasons set forth above, I am obligated to grant Defendants' Motion for Summary Judgment. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge
